# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| REBEKAH BURROUGHS, individually and as Administratrix of the ESTATE OF TODD BRENT BURROUGHS, D. B., individually by her *Guardian Ad Litem*, Donald R. Vaughan, and C. B., individually by his *Guardian Ad Litem*, Morgan Davis,<br><br>                 Plaintiffs,<br><br>   v.<br><br>SAMUEL S. PAGE, in his official capacity as Sheriff of Rockingham County, FRANK L. MARTIN and CHASE M. MYERS, each in his individual and official capacities, and LIBERTY MUTUAL INSURANCE COMPANY, as surety,<br>                   Defendants. | Case No.: 1:17-CV-463 |

## PLAINTIFFS' BRIEF
## IN RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## **INTRODUCTION**

Defendants shot and killed Todd Burroughs in his own driveway in front of his wife and two minor children. He had committed no crime. In the process, the officers executed multiple patent violations of Plaintiffs' constitutional rights, demonstrated by evidence developed in discovery. First, they initiated an unlawful traffic stop of Mr. Burroughs and his family. Second, they falsely arrested Mr. Burroughs on his own property with no probable cause. Third, they improperly escalated the use of force while Mr. Burroughs passively resisted his wrongful arrest, including inexplicably firing shots at the family dog. Fourth, Defendant Martin shot Mr. Burroughs to death with no legitimate authority to do so. Lastly, the customs of the Rockingham County Sheriff's department—including tacit consent and failures to train—enabled its officers to commit these flagrant violations.

Had Defendants followed the law, Todd Burroughs would be alive today. Instead, Defendants took actions far beyond the bounds of their legal authority as law enforcement officers. Defendants' specious argument that no genuine issues of material fact are in dispute is wholly unpersuasive, as they **rely solely** on their own testimony. Defense counsel took the depositions of each and every Plaintiff. Defendants have in their possession investigation reports, notes from interviews immediately following the incident, policy manuals, body cam footage and crime scene photographs. Despite the mass of evidence a jury will consider in this case, Defendants' motion for summary judgment does not cite a single piece other than their own depositions. Even if Defendants' view of the events were to be believed, their misconduct constituted violations of the Plaintiffs' rights

1

as a matter of law. Indeed, the only reason Plaintiffs did not move for summary judgment themselves is because they bear the burden of proof in this case.

Defendants' highly-selective presentation falls short, particularly where the Court is required to construe the evidence in the light most favorable to Plaintiffs.[1] Accordingly, Defendants' Motion must be denied because there are genuine issues of material fact as to the circumstances surrounding the unlawful stop and arrest of Mr. Burroughs, the improper escalation of force and the use of deadly force on Mr. Burroughs, and the policies, practices and failures to train at the Rockingham County Sheriff's Department that bred this misconduct.

## STATEMENT OF THE CASE

This case arises from the unlawful shooting of Mr. Todd Burroughs in the driveway of his own home on May 29, 2016, stemming from an unconstitutional "investigatory" traffic stop. On March 29, 2017, this Complaint was filed by Mr. Burroughs' two minor children and by his wife, Rebekah Burroughs, on behalf of herself and the Estate of Todd Burroughs, for wrongful death, negligent infliction of emotional distress, violations of the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983, and action on the bond. These claims were brought against: Sheriff Samuel L. Page ("Sheriff Page"), as the final authority setting policy and practices for the Rockingham County Sheriff's Department, Sheriff's Corporal Frank L. Martin ("Corporal Martin"), who shot and killed Mr. Burroughs, Sheriff's Deputy Chase M. Myers ("Deputy Myers"), who initiated the illegal

---

[1] In support of this Brief, Plaintiffs rely on the concurrently filed Plaintiffs' Fed. R. Civ. P. 56.1(a)(2) Statement of Material Facts in Genuine Dispute and attached exhibits.

traffic stop, and Liberty Mutual Insurance Company ("Liberty Mutual"), as the surety on the Sheriff's bond.

Discovery has been conducted in this matter, and Defendants timely filed their Motion for Summary Judgment on October 26, 2018 (ECF No. 42). Plaintiffs file this Opposition thereto.

## STATEMENT OF FACTS

Plaintiffs' refer the Court to their separately-filed Fed. R. Civ. P. 56.1(a)(2) Statement of Material Facts (hereinafter, "SMF"), which outlines the disputed facts and other facts relevant to the issues presented.

## QUESTION PRESENTED

Should Defendants' Motion for Summary Judgment be denied because Plaintiffs have raised substantial and material issues of genuine disputed fact, which demonstrate that a reasonable jury could (1) find in Plaintiffs' favor on their claims and (2) find that Defendants' are not entitled to qualified immunity for those claims?

## STANDARD OF REVIEW

It is well-established that "[s]ummary judgment is appropriate only if the record shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Westfield Ins. Co. v. Nautilus Ins. Co.*, 154 F. Supp. 3d 259, 263 (M.D.N.C. 2016)(citing *Woollard v. Gallagher*, 712 F.3d 865, 873 (4th Cir.2013); see also Fed. R. Civ. P. 56(a)). A fact is "material" if it might affect the outcome of the litigation, and a dispute is "genuine" if the evidence would permit a reasonable jury to find for the nonmoving party. *High v. R & R Transportation, Inc.*, 242 F. Supp. 3d 433, 438

3

(M.D.N.C. 2017)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

If a genuine issue of material fact exists, the motion for summary judgment must be denied. *Gray v. Spillman*, 925 F.2d 90, 95 (4th Cir. 1991). To determine whether a genuine issue exists, reasonable inferences from the record must be drawn in plaintiff's favor after reviewing the facts in the light most favorable to the plaintiff. *Waterman v. Batton*, 393 F.3d 471, 473 (4th Cir. 2005)(citing *Gray-Hopkins v. Prince George's County*, 309 F.3d 224, 229 (4th Cir. 2002)); *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011). The role of the court is not "to weigh the evidence and determine the truth of the matter" but rather "to determine whether there is a genuine issue for trial." *High,* 242 F. Supp. 3d at 438.

When, as here, Defendants raise the defense of qualified immunity, it does not alter the ordinary rules applicable to summary judgment proceedings, but "this usually means adopting ... the plaintiff's version of the facts." *Blackburn v. Town of Kernersville*, No. 1:14CV560, 2016 WL 756535, at *1 (M.D.N.C. Feb. 25, 2016)(Biggs, J.)(citing *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008)); *see also Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992).

## **ARGUMENT**

### I.   **Plaintiffs Have Plainly Established Violations of 42 U.S.C. § 1983.**

Plaintiffs have established, through the evidence, several violations of 42 U.S.C. § 1983 by Defendants, including: (1) an illegal traffic stop by Defendants Myers and Martin, (2) the false arrest of Mr. Burroughs by Defendants Myers and Martin, (3) the misuse of force by Defendants Myers and Martin against Mr. Burroughs and the family dog, (4) the

4

unlawful use of deadly force on Mr. Burroughs by Defendant Martin and (5) *Monell* liability against Sheriff Page for unconstitutional policies, procedures and failures to train. On each of these claims, disputed material facts have been developed on which a reasonable jury could—and should—find violations of § 1983.

The two essential elements of any § 1983 claim are (1) whether the defendant was acting under color of state law and (2) whether the defendant's conduct deprived plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States. *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998)(citing 42 U.S.C. § 1983). There is no dispute that Defendants were acting under color of state law, so the sole question for a fact finder will be whether their actions violated Plaintiffs' constitutional rights. It is long settled that § 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989)(citing *Baker v. McCollan,* 443 U.S. 137, 144, n. 3 (1979)). Accordingly, a violation of § 1983 claim is established when the elements of the underlying constitutional violation are met. *Id.* at 394. Accordingly, each violation should be examined separately.

### A. Defendants' Initial Traffic Stop Was Unconstitutional Because They Lacked Reasonable Suspicion To Stop Plaintiff.

Defendants wholly lacked any reasonable suspicion to stop Mr. Burroughs. A *Terry* stop—a brief, investigatory stop— is permitted under the Fourth Amendment <u>only</u> if the stop is based on reasonable suspicion "supported by articulable facts that criminal activity 'may be afoot.'" *United States v. Sokolow*, 490 U.S. 1, 7 (1989)(quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). "The reasonable suspicion necessary to justify a stop depends on 'both the

5

content of information possessed by police and its degree of reliability.'" *Blackburn v. Town of Kernersville*, No. 1:14CV560, 2016 WL 756535, at *3 (M.D.N.C. Feb. 25, 2016)(citing *Alabama v. White,* 496 U.S. 325, 330 (1990)). Here, no articulable facts supported Defendant Myers' decision to turn on his blue lights.[2]

Defendant officers essentially admit that they had no reason to believe "criminal activity 'may be afoot'" when they decided to investigate Mr. Burroughs. (SMF ¶¶ 12-18.) Defendants Myers and Martin argue that they had reasonable suspicion based on (1) the location of the truck and (2) the time of night. These factors fail to raise reasonable suspicion to stop this specific vehicle, but would have applied to any vehicle in the area at this time. The Court of Appeals, in *State v. Murray*, specifically rejected that very basis for a stop. 192 N.C. App. 684, 687, 666 S.E.2d 205, 208 (2008). The *Murray* court found that a vehicle stop was illegal and lacked reasonable suspicion where:

> [A]t the time Officer Arthur stopped the vehicle, he had "no reason to believe" that its occupants were engaged in any unlawful activity…[and] "had no suspicion that illegal activity had occurred" at the time of the stop. Officer Arthur never articulated any specific facts about the vehicle itself to justify the stop; instead, all of the facts relied on…were general to the area, namely, the "break-ins of property at Motorsports Industrial Park ... the businesses were closed at this hour ... no residences were located there ... this was in the early hours of the morning," and would justify the stop of *any* vehicle there.

*Id.*

Similarly, Defendants here have identified no facts specific to Mr. Burroughs' vehicle**,** but rather rely on generalized facts. For example, Defendants state that the "rural"

---

[2] The time and location that Defendant Myers turned on the patrol car's blue lights is a material matter of genuine dispute. The officers state that they engaged them almost immediately after beginning to follow Mr. Burroughs. (SMF ¶ 20.) The three Burroughs family members in the truck, however, state that the blue lights did not come on until they were entering their driveway, and that testimony is corroborated by a neighbor who was awake, heard the truck pass by and did not see blue lights. (SMF ¶¶ 21-22.)

location of the truck and the time of night contribute to a reasonable suspicion. (SMF ¶ 17.) Such general facts do not support reasonable suspicion. *Id.*; *see also State v. Chlopek*, 209 N.C. App. 358, 363–64, 704 S.E.2d 563, 567 (2011)(no reasonable suspicion based on general findings of "Defendant's presence at that time of night in a partially developed subdivision ... during a time where numerous copper thefts had been reported in Wake County").

Moreover, the generalized facts on which Defendants rely are in dispute. Defendants speciously argue that the truck was "suspicious" because it was located near a business on the "keep checks" form. Plaintiffs first dispute that Mr. Burroughs' vehicle was located on the Stuart's Recycling property. (SMF ¶¶ 13-14.) Indeed, Defendants testified that the truck was so far away that they could not even tell it was a vehicle. (SMF ¶ 15.) Plaintiffs further dispute that Stuart's Recycling's placement on the list of businesses to receive keep checks provided any information about prior or potential criminal activity there. To the contrary, Defendants have testified that businesses place themselves on the list, without any requirement of prior criminal activity on the property; indeed, a more thorough check would have been conducted had an actual break-in occurred on or near Stuart's Recycling. (SMF ¶¶ 8-9.) They intentionally and knowingly did ***not*** perform the more thorough check that would have been required had breaking and enterings been a legitimate concern. (SMF ¶ 11.) Lastly, Defendants have testified that they do not recall stopping any other vehicle during keep checks at this time of night. (SMF ¶ 10.)

In addition, Defendants' given reasons for stopping Mr. Burroughs are dubious. Deputy Myers stated that he stopped Mr. Burroughs' truck because he "had a feeling in my

stomach that something didn't seem right." (SMF ¶ 18.)  This type of arbitrary stop is, as a matter of law, unsupported by reasonable suspicion.  *Murray*, 192 N.C. App. at 687 ("the requisite degree of suspicion must be high enough 'to assure that an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field.'")

Based on the evidence, a reasonable jury could—and should—find that Defendant Myers[3] and Defendant Martin violated 42 U.S.C. § 1983 when they initiated the traffic stop of Mr. Burroughs' truck without any reasonable suspicion.

### B. Defendants Falsely Arrested Mr. Burroughs, As He Had Committed No Crime And No Probable Cause Existed To Believe That He Had.

Defendants' constitutional violations continued as they pulled into Mr. Burroughs' driveway and attempted to unlawfully arrest him.[4]  Under the Fourth Amendment, a warrantless arrest is permitted only "where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004); *see also United States v. Johnson*, 599 F.3d 339, 346 (4th Cir. 2010).  Probable cause requires 'more than 'bare suspicion,'" *Porterfield v. Lott*, 156 F.3d 563, 569 (4th Cir. 1998), and must be "based upon a practical assessment of the totality of the circumstances." *United*

---

[3] Defendants erroneously argue that Defendant Myers did not commit any violation that constitutes a § 1983 violation —but Defendant Myers himself admits that he personally initiated the traffic stop Plaintiffs contend was unlawful and ultimately led to the death of Mr. Burroughs. (SMF ¶ 18.)  He also fired shots at the Burroughs' family dog. (SMF ¶ 32.)

[4] The Estate has made a claim against Defendant Martin for his unlawful entry upon Mr. Burroughs' property. Defendants have not addressed this claim in their motion and, therefore, concede it. Summary judgment must be denied on this claim as Defendants have failed to carry their burden under F. R. Civ. P. 56(a). *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law).

*States v. Garcia*, 848 F.2d 58, 60 (4th Cir. 1988). Probable cause is an "objective" standard, requiring that at the time of arrest, "the facts and circumstances within the officer's knowledge would warrant the belief of a prudent person that the arrestee had committed or was committing an offense." *Johnson*, 599 F.3d at 346 (quoting *United States v. Manbeck*, 744 F.2d 360, 376 (4th Cir. 1984)); *Herring v. United States*, 555 U.S. 135, 139, 129 S. Ct. 695, 172 L. Ed. 2d 496 (2009).

Defendants Myers and Martin argue that, during their pursuit of Mr. Burroughs' vehicle, they developed probable cause to arrest him for improperly resisting or evading arrest. First, Plaintiffs dispute the factual basis for this claim—while Defendant Martin contends he planned to arrest Mr. Burroughs for "failing to stop for a blue light and siren," all three members of the Burroughs family inside the truck have all testified that no blue lights were turned on until they were entering their driveway. (SMF ¶¶ 5, 21.) Indeed, a disinterested neighbor witnessed the truck pass by and said no blue lights followed it. (SMF ¶ 22.) This argument is bolstered by Ms. Burroughs' undisputed testimony that the officers never told Mr. Burroughs what he was allegedly being arrested for, even after he repeatedly asked. (SMF ¶ 24.) Accordingly, under Plaintiffs' view of the facts, there was no probable cause to arrest Mr. Burroughs when Defendants unlawfully entered his property.

Moreover, contrary to Defendants' claims, because no probable cause existed to arrest Mr. Burroughs in the first place, it was legally impossible for Mr. Burroughs to have been charged with resisting arrest. *State v. Sparrow*, 276 N.C. 499, 512, 173 S.E.2d 897, 906 (1970)(a citizen who resists an officer's unlawful entry into the home cannot be

9

charged with a violation of N.C. Gen. Stat. § 14-223).  North Carolina citizens have a recognized and long-standing right to resist an unlawful arrest.  *State v. Mobley*, 240 N.C. 476, 478-79, 83 S.E.2d 100, 102 (1954)("[i]t is axiomatic that every person has the right to resist an unlawful arrest" and no officer is authorized to arrest a citizen for resisting if the citizen is exercising their lawful right to resist the officer's actions).

Moreover, because the arrest took place on Mr. Burroughs' property, he had the right not to comply with the arrest.  In 2011, North Carolina revised its castle doctrine statutes to provide the following: where the unlawful arrest happens in the citizen's home or automobile, citizens (i) are presumed to be in reasonable fear for their lives, (ii) have no duty to retreat or submit, and (iii) have a right to use any degree of force in resistance, *including even deadly force*, against the officer's unlawful actions. N.C. Gen. Stat. § 14-51.2(e) and 51.3 (2011).  Plaintiffs emphatically note that, while this was law at the time of his false arrest, they dispute that Mr. Burroughs used any force, much less deadly force, at any time during the attempted arrest.

As Mr. Burroughs committed no crime and no probable cause existed to arrest him, Defendants violated his constititonal rights to be free from unreasonable seizures and, accordingly, he has substantiated his § 1983 claim.

### C.     Defendants' Use of Force and Use Of Deadly Force Was Unconstitutional Because No Reasonable Officer Would Have Used The Less-Than-Lethal *Or* Deadly Force Employed Against Mr. Burroughs.

Defendants' actions were objectively unreasonable, and plainly breached the constitutional bounds of any legitimized use of force.  In the Fourth Circuit, the operative question in excessive force cases "is whether a reasonable officer could have believed that

the use of force alleged was objectively reasonable in light of the circumstances." *Rowland v. Perry*, 41 F.3d 167, 173 (4th Cir. 1994). Here, Defendants Myers and Martin both engaged in levels of force far beyond what an objective officer would have deemed reasonable because (1) they were not permitted to use any force following their unlawful stop of Mr. Burroughs and (2) the threat posed by Mr. Burroughs, during an allegedly routine investigatory stop occurring in his own driveway, did not warrant the levels of force employed, particularly deadly force.

> **1.    Because There Was No Cause To Stop Or Arrest The Plaintiff, Any Use Of Force Was Unreasonable.**

An officer <u>only</u> has a right to use force against a citizen where the officer first has a right to arrest; in other words, an unlawful arrest carries with it no right to use force. *Brown v. Gilmore,* 278 F.3d 362, 369 (4th Cir. 2002)(explaining that even low levels of force such as handcuffs are allowed "where the officers were justified . .. in effecting the underlying arrest."). Accordingly, any amount of force used in the course of an unlawful arrest is unreasonable under the Fourth Amendment and actionable under under § 1983. *Bailey v. Kennedy*, 349 F.3d 731, 742 (4th Cir. 2003); *Nolin v. Isbell*, 207 F.3d 1253, 1257, 1258 (11th Cir. 2000)(if officer attempts an arrest "without probable cause . . . any use of force is inappropriate"); *Jackson v. Sauls*, 206 F.3d 1156, 1171 (11th Cir. 2000)("if a stop or arrest is illegal, then there is no basis for any threat or any use of force."); *Cortez v. McCauley*, 478 F.3d 1108, 1127 (10th Cir. 2007)(if the underlying arrest is unlawful, plaintiff is

entitled to "damages resulting from any force" including even force that was "reasonably employed in effecting the arrest."); *Nails v. Riggs*, 195 F. App'x 303, 313 (6th Cir. 2006).[5]

The evidence, as outlined above, clearly shows that Defendants unlawfully initiated the traffic stop, unlawfully followed Mr. Burroughs onto his property, and unlawfully attempted to arrest him. Accordingly, <u>any amount</u> of force used against Mr. Burroughs in the ensuing encounter was unauthorized and unlawful—from the shots Defendants fired at the family dog, to Defendant Martin's use of his taser, pepper spraying Mr. Burroughs, and striking Mr. Burroughs with his ASP Baton, to the three fatal shots fired at Mr. Burroughs. Each of these actions violated Mr. Burroughs' Fourth Amendment rights as a matter of law. *Graham v. Connor*, 490 U.S. 386, 396 (1989)(justification for force only exists where the officer has "the right to make an arrest or investigatory stop"); *Saucier v. Katz*, 533 U.S. 194, 208 (2001)(the right to use any degree of physical force only comes with predicate right to arrest).

Accordingly, every single use of force by Defendants against Mr. Burroughs constitutes a claim under § 1983 for which Plaintiffs are entitled to damages. As such, Defendants' motion for summary judgment on Plaintiffs' excessive force and misuse of deadly force claims must be denied.

---

[5] Moreover, any use of force against a citizen <u>lawfully resisting</u> arrest supports a § 1983 claim for excessive force against the officer. *Bailey*, 349 F.3d at 743-44 (lack of probable cause to arrest weighs heavily in plaintiff's favor under a § 1983 use of force analysis); *Jones v. Buchanan*, 325 F.3d 520, 534 (4th Cir. 2003)(it has long been a clearly established right that officers cannot use force against a person who had not committed a crime).

**2. Even If The Stop, Entry Onto The Property And False Arrest Had All Been Proper, The Use Of Deadly Force Would Have Been Far Too Excessive Under The Totality Of The Circumstances.**

No reasonable officer in Defendant Martin's position would have believed the use of deadly force to have been necessary against Todd Burroughs where no crime had been committed, he was on his own property, his wife and children were in the car, he was (at most) passively resisting arrest, and he had no weapon. The appropriate inquiry in an excessive force case is whether an officer's use of force is objectively reasonable in light of the totality of the facts and circumstances confronting the officer, without regard to the officer's underlying intent or motivation. *Graham*, 490 U.S. at 397. This includes three factors: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

Courts must consider these factors "with an eye toward the proportionality of the force in light of all the circumstances." *Smith v. Ray*, 781 F.3d 95, 101 (4th Cir. 2015). As discussed *supra*, there was no crime committed here and Mr. Burroughs was not resisting a lawful arrest. Moreover, there is substantial evidence that Mr. Burroughs never *actively* resisted this illegal arrest at all. (SMF ¶¶ 24-5, 28, 30-1, 36-7, 40-3.) Accordingly, both the first and third *Graham* factors do not counsel the use of any force, much less deadly force, strongly indicating the force employed by Defendants was disproportionate.

Defendants' primary argument—that their use of force was appropriate because Mr. Burroughs posed an immediate threat to their safety—lacks merit. First, Defendant Martin's utilization of less-than-lethal force was unjustified. There are significant factual

13

disputes about Mr. Burroughs' behavior during the encounter. Rebekah Burroughs has testified that Todd initially got out of the vehicle, stood at the back of the truck and repeatedly requested to know "what was going on." (SMF ¶ 24.) Defendant Martin never told him what was going on, but instead yelled for him to get on the ground. (SMF ¶ 24.) Even that initial direction was objectively unreasonable under the circumstance. Further, Defendant Martin already had his taser out for no articulable reason. (SMF ¶ 23.) When Mr. Burroughs did not lie down on the ground, Defendant Martin decided to taser him, apparently in part because he "had a closed mouth grin." (SMF ¶ 23, 26.) The use of a taser at that point, where Mr. Burroughs was only passively noncompliant to Defendant Martin's commands, was wholly unjustified. *Yates v. Terry*, 817 F.3d 877, 885-86 (4th Cir. 2016)(Biggs, J.)(holding that use of a taser for a nonviolent traffic infraction, without warning was unreasonable); *Estate of Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 904 (4th Cir.), *cert. denied*, 137 S. Ct. 61, 196 L. Ed. 2d 32 (2016)("a rule limiting taser use to situations involving a proportional safety threat does not countenance use in situations where an unrestrained arrestee, though resistant, presents no serious safety threat"); *Meyers v. Baltimore Cty., Md.,* 713 F.3d 723, 726 (4th Cir. 2013)(use of the taser was not objectively reasonable when plaintiff was not actively resisting arrest).

The presentation of force did not, however, stop there. Defendant Martin claims that Mr. Burroughs then threw a full beer can at him, but Ms. Burroughs testified that this never happened and the officers' stories conflict with one another. (SMF ¶¶ 27-8.) Her account is corroborated by a crime scene inventory that shows no full beer cans were found at the scene. (SMF ¶ 28.) Defendant Martin proceeded to pepper spray Mr. Burroughs in the back

of the head, and it is undisputed that Mr. Burroughs was walking away from him at that point. (SMF ¶30.) Defendant Martin then used his ASP baton on Mr. Burroughs, under sharply disputed circumstances. (SMF ¶¶ 34-36.) The officers claim Mr. Burroughs charged Defendant Martin into the side of his truck, but that is controverted by the testimony of the Burroughs family members inside the truck. (SMF ¶ 36.) By all accounts, Defendant Martin was not held by Mr. Burroughs, even after he allegedly took the baton from Martin's hand and threw it on the ground nearby. (SMF ¶ 36.)

Defendant Martin's final escalation was the employment of deadly force—he fired three shots into Todd Burroughs, killing him in front of his wife and two children. (SMF ¶¶ 37-41.) A primary, and sharply disputed, issue in this case is whether Todd Burroughs had a baton in his hand at the time that he was shot. Defendants Martin and Myers claim that he did, but Rebekah Burroughs, D.B. and C.B. steadfastly maintain that he did not. (SMF ¶¶ 37-41.) The crime scene photographs show a baton far from where Mr. Burroughs' body fell to the ground when he was shot. (SMF ¶ 43.) In the body cam video, Ms. Burroughs can be heard yelling to Defendant Martin, in real time, "Calm down! He doesn't have a ….. baton!" (SMF ¶ 41; Edwards Dec. ¶ 5.) It is clear that, under Plaintiffs' view of the facts, the use of deadly force against Mr. Burroughs was unjustified.

Even under Defendants' view of the facts, the use of deadly force was objectively unreasonable. First, Defendant Martin alleges he brought a gun to a baton fight, in contravention of the Rockingham County Sheriff's Department's own policies. (SMF ¶ 44; Ex. 2.) Further, Defendant Martin states Mr. Burroughs had the baton down by his side at the time of the shooting, not raised or otherwise indicating any attack on Martin. (SMF ¶

39.) Defendant Martin has also stated that, after he shot Mr. Burroughs twice directly in the chest, he then felt to be "under active attack," and shot him a third time. (SMF ¶ 40.) That explanation is nothing short of implausible, and calls into question Defendant Martin's reasonableness and decision-making capacity during the incident.

Regardless, under these circumstances, shooting Mr. Burroughs was objectively unreasonable. The Fourth Circuit has made clear that "the mere possession of a [deadly weapon] by a suspect is not enough to permit the use of deadly force.... Instead, deadly force may only be used by a police officer when, based on a reasonable assessment, the officer or another person is *threatened* with the weapon." *Cooper v. Sheehan*, 735 F.3d 153, 159 (4th Cir. 2013). The *Cooper* court held deadly force to be improper against a man who "stood at the threshold of his home, holding the shotgun in one hand, with its muzzle pointed at the ground."

Further, it does not matter that Defendant Martin claims he was in fear for his life— that fear was subjective. The constitution requires that the use of deadly force be utilized only where the fear was objectively reasonable—meaning there was an actual possibility of imminent death based on articulable fact. The Fourth Circuit found deadly force unauthorized, as no immediate threat existed, where the decedent "possessed a paring knife, refused to comply with repeated commands to drop the weapon, and continued down the stairs (and thus closer to [the officer]) rather than stopping." *Connor v. Thompson*, 647 Fed.Appx. 231, 237 (4th Cir. 2016). Defendant Martin had no serious indication of the threat of death and, as such, a jury could—and should—find that the use of deadly force against Todd Burroughs was objectively unreasonable. Accordingly, the evidence

demonstrates that Plaintiffs have an excessive force claim under §1983 and, as such, Defendants' Motion for Summary Judgment should be denied.

### D. Plaintiffs Have Set Forth Sufficient Evidence To Demonstrate *Monell* Claims Against Defendants in Their Official Capacities For Unconstitutional Policies and Practices.

It is well-settled that a local government entity, like the Rockingham County Sheriff, is liable under §1983 when the execution of a policy or custom inflicts injury upon a citizen. *Monell v. Dept. of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037-38 (1978). In *Spell v. McDaniel,* the Fourth Circuit held that a local government entity may be found liable under § 1983 for the constitutional violations of its officers where it has a "custom" of condoning unconstitutional behaviors. 824 F.2d 1380, 1389-90 (4th Cir. 1987), *cert. denied,* 484 U.S. 1027, 108 S.Ct. 7521 98 L.Ed.2d 765 (1988). To establish *Spell* liability, Plaintiffs must (1) identify the specific custom, (2) fairly attribute the custom and fault for its creation to the Sheriff's Office, and (3) find the necessary "affirmative link" between the identified custom and the specific violation. *Id.*

Regarding the first factor, it is well established that informal customs of the department are actionable where they allow or "even tacitly encourage" officers to fall into a pattern or practice of unconstitutional conduct. *Spell,* 824 F.2d at 1390. These practices become "customs" of the department where they are "sufficiently widespread." *Id.* In this case, Sheriff Page sanctioned the use of excessive force by (1) failing to appropriately discipline officers who engage in such conduct and (2) failing to properly train his officers on the appropriate use of force. Indeed, after the shooting of Todd Burroughs, and prior to

any investigation into the circumstances, Defendant Page assured his deputies that "it would be okay." (SMF ¶ 49.)

The second *Spell* factor requires only that Plaintiffs show that Sheriff Page was aware of the improper conduct by either actual <u>or</u> constructive knowledge. *Spell*, 824 F.2d at 1391. Constructive knowledge may be evidenced by practices so widespread that the department "should have known of them." *Id*. at 1387. Indeed, here, Sheriff Page was fully aware of the misuse of force—although Defendants were put on administrative leave pending investigation of Mr. Burroughs' death, they were not otherwise disciplined. (SMF ¶ 49.) He effectively sanctioned the constitutionally violations performed by his deputies in sweeping this conduct under the rug and permitting this type of misconduct within his department. Indeed, he emphasized that he "stood by and supported his employees," even under the circumstances presented here. (SMF ¶ 49.) *Sledd v. Lindsay,* 102 F.3d 282 (7th Cir. 1996)(code of silence and failure to investigate disciplinary complaints against officers makes city liable for excessive force).

Plaintiffs demonstrate the final *Spell* factor by establishing that the violation of their rights was made "reasonably probable by permitted continuation of the custom" by the Sheriff's Office. *Spell*, 824 F.2d at 1391. The U.S. Supreme Court explained in *City of Canton v. Harris,* that where training of law enforcement officers is so inadequate as to be "likely to result in the violation of constitutional rights," the policymaker can be deemed to have been "deliberately indifferent to the need." 489 U.S. 378, 390 (1989). Indeed, Plaintiffs have asserted facts that indicate Defendant Page was on constructive notice of a need to better discipline and train his deputies on proper use of force, but did nothing to

18

address the need.  (SMF ¶ 49.)  This "standing by" his employees assured them that they would not suffer the consequences when their actions violated citizen's rights, thereby making it all the more likely that such violations would persist.

Accordingly, a jury could certainly find that the impunity granted to the Sheriff's deputies, and the lack of training within the department, created the very situation that resulted in Mr. Burroughs' death.  *See Brown v. Bryan County,* 219 F.3d450, 465 (5th Cir. 2000)(jury reasonably found that county was deliberately indifferent in not training defendant deputy in use of force, despite obvious need for such training). Summary Judgment on Plaintiffs' *Monell* claims against Rockingham County Sheriff Page should thus be denied.

II.     **As No Reasonable Officer Would Have Taken The Actions Defendants Did, They Are Not Entitled To Qualified Immunity.**

Qualified immunity does not protect officers whose conduct, like Defendants', violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982). At the summary judgment stage, the Court examines: (1) whether the facts, viewed in the light most favorable to the Plaintiff, show that the officers violated a constitutional right, and (2) if so, whether the constitutional right was clearly established at the time of the violation. *Saucier v. Katz*, 533 U.S. 194, 201-02, 121 S.Ct. 2151, 2156-57 (2001).  Here, Plaintiffs have established facts that demonstrate neither Defendant Myers nor Defendant Martin are entitled to qualified immunity.

## A.  Constitutional Violation.

As explained *supra* at pp. 4-17, Defendants' actions plainly violated Mr. Burroughs' constitutional rights under the Fourth and Fourteenth Amendments.  Moreover, the Court need only determine whether a reasonable jury could find a constitutional violation, and the disputed facts clearly demonstrate that it could.

## B.  Clearly Established Right.

For the second prong of the analysis, qualified immunity will not extend if the right violated was "clearly established" at the time of the violation.   A right is clearly established if the officer had "fair warning" that his conduct was unconstitutional, which essentially means that "a reasonable person would have known that his conduct was unconstitutional." *Smith v. Ray*, 781 F.3d 95, 100 (4th Cir. 2015); *Hope v. Pelzer*, 536 U.S. 730, 740 n.10 (2002).  This does not require the scenario faced by the officer be specifically addressed by a previous court decision, but only that "in the light of pre-existing law the unlawfulness … be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  In "obvious cases," closely analogous pre-existing case law is not necessary. *Clem v. Corbeau*, 284 F.3d 543, 553-54 (4th Cir. 2002); *Hope*, 536 U.S. 730.

The case law set forth *supra* at pp. 5-15 demonstrates that Defendants had ample notice that their actions violated the constitution.  *See, e.g., Murray*, 192 N.C. App. 684 (unlawful investigatory stops), *Armstrong* 810 F.3d. 892 (illegal use of tasers), *Connor*, 647 Fed.Appx. 231 (deadly force).  For excessive force claims, "[u]ltimately, our clearly established determination is based on… [whether] the officer took a situation where there obviously was no need for the use of any significant force and yet took an unreasonably

20

aggressive tack." *Smith*, 781 F.3d at 104.   Defendants Myers and Martin took an "unreasonably aggressive tack."   For example, Defendants Myers and Martin both inexplicably shot at (and Martin killed) the family dog.  (SMF ¶¶ 34, 45.)  It had further been "clearly established" that the deadly force employed was unauthorized. The Fourth Circuit held, prior to this incident, deadly force to be impermissible in even *more* threatening circumstances. *See, e.g., Connor*, 647 Fed.Appx. 231; *Cooper*, 735 F.3d 153. Accordingly, each of Defendants' violations of Mr. Burroughs' constitutional rights were "clearly established" at the time of the incident.

> ### C.    Objectively Unreasonable.

Defendants' constitutional violations, including the use of deadly force on Todd Burroughs, were all objectively unreasonable under the circumstances, for all the reasons set forth *supra* at pp. 5-15.   A reasonable officer would not have believed there was reasonable suspicion to stop Mr. Burroughs only due to the time of night and his car being near a "keep check" business that did not have a recent history of any break-ins.   A reasonable officer would not have entered Mr. Burroughs' property, jumped out of the patrol car while it was still moving, and demanded he get on the ground, with no probable cause to conduct a warrantless arrest. A reasonable officer would not have believed that utilizing a taser, pepper spray and an ASP baton was necessary against a man who was passively noncompliant, particularly when no crime had been committed and his wife and children sat in the nearby car.

Finally, a reasonable officer would not have thought it necessary to shoot—three times—a man who had no weapon at all or, if he did, was not demonstrating any intention

21

to use that weapon in a life-threatening manner. "The intrusiveness of a seizure by means of deadly force is unmatched" and may only be used "when [an officer] has probable cause to believe that a suspect poses a significant threat of physical harm to the officer or to others." *Tennessee v. Garner*, 471 U.S. 1, 9 (1985). The central question is whether an objectively reasonable officer would have believed Mr. Burroughs posed a serious threat to his safety or the safety of others. *Garner*, 471 U.S. at 12; *Graham*, 490 U.S. 396. Defendants' arguments, even if believed, rely on Defendant Martin's own surmise about what Mr. Burroughs *may* have done. That is not enough to meet the objective reasonableness standard for use of force or use of deadly force. An officer cannot guess or speculate as to the danger posed by a suspect, but instead "must have a sound reason to believe that the suspect poses a serious threat to their safety or the safety of others." *Elliott v. Leavitt*, 99 F.3d 640, 644 (4th Cir. 1996).

Moreover, Defendants' asserted version of events is **heavily disputed** by Plaintiffs. As discussed *supra*, the evidence demonstrates a factual dispute regarding, *inter alia*, whether Mr. Burroughs had an ASP baton in his hand at all when he was shot by Defendant Martin. It is black letter law that, in § 1983 law enforcement cases, a court should deny summary judgment on qualified immunity when a genuine issue of material fact exists regarding the circumstances in which the officer detained or used force against the plaintiff. *Massasoit v. Carter*, 439 F.Supp.2d 463, 470 (M.D.N.C. 2006); *Schultz v. Braga*, 455 F.3d 470 (4th Cir. 2006)(factual dispute over whether an automobile passenger was making a dangerous noncompliant movement when he was shot); *Clem v. Corheau*, 284 F.3d 543 (4th Cir. 2002)(factual dispute over whether an unarmed mentally ill man who had been

pepper-sprayed was a threat to the officer); *Gray-Hopkins v. Prince George's County*, 309 F.3d 224 (4th Cir. 2002)(jury issue as to whether decedent was standing with his hands over his head at the time he was fatally shot); *Vathekan v. Prince George's County*, 154 F.3d 173 (4th Cir. 1998); *Rowland v. Perry*, 41 F.3d 167 (4th Cir. 1994); *Kopf v. Wing*, 942 F.2d 265, (4th Cir. 1991).

Plaintiffs have raised genuine issues of material fact appropriate for a jury to determine, particularly where conflicting witness accounts require consideration of witness credibility. Indeed, the Fourth Circuit has made clear that summary judgment must be denied in § 1983 cases where the resolution of material factual disputes depends upon the credibility of witnesses. *Gray v. Spillman*, 925 F.2d 90, 95 (4th Cir. 1991). Accordingly, Defendants are not entitled to qualified immunity and summary judgment should be denied.

## III. Plaintiffs Have Established Tort Claims, And Those Claims Are Not Barred By Any Immunity.

### A. Plaintiffs Have Established The Elements of Their Tort Claims.

#### 1. False Imprisonment Claims

Where a plaintiff has presented a valid claim for unreasonable seizure under the Fourth Amendment, "the police officers also committed both false arrest and false imprisonment under state law." *Bailey*, 349 F.3d at 742 (citing *Glenn-Robinson v. Acker*, 140 N.C. App. 606, 538 S.E. 2d 601, 614 (2000)); *Emory v. Pendergraph*, 154 N.C. App. 181, 571 S.E. 2d 845, 848 (2002)(holding that false imprisonment means the illegal restraint of someone against his will). As articulated *supra*, the conduct of each Defendant violated Plaintiffs' clearly established rights under the Fourth Amendment to be free from

23

unreasonable seizures. Accordingly, summary judgment on Plaintiffs' state law false imprisonment claims should also be denied.

### 2. Burroughs Wrongful Death Claims

Defendants speciously argue that the Estate's wrongful death claim should be dismissed (i) for lack of evidence that Defendant Page was "involved" in or breached any duty that caused Mr. Burroughs' death, and (ii) because "no action or inaction" by Myers caused his death. That is simply incorrect. As demonstrated above, Defendant Page is liable for Mr. Burroughs' death for tacitly sanctioning the misuse of force by his deputies through repeated failures to train, reprimand, and discipline. As a result, Defendant Martin's wrongful conduct that killed Todd Burroughs was reasonably probable.

Moreover, Defendant Myers' decision to initiate the illegal traffic stop led to the wrongful death of Mr. Burroughs. Moreover, sufficient evidence exists that Myers actively participated in the force events leading to Todd Burroughs' death, including shooting at the Burroughs family dog and acting as a negligent, passive bystander in the face of Defendant Martin's employment of excessive, deadly force against Mr. Burroughs. (SMF ¶ 32, 40.)

These constitute breaches of direct law enforcement duties owed to all citizens of Rockingham County, including Mr. Burroughs. Based on the facts developed, a reasonable jury certainly could—and should— find that Defendants breached those duties and that, as a result, Mr. Burroughs was unlawfully shot and killed.

### 3. Assault and Battery Claims

In cases where "a jury could find that no reasonable officer could have believed his conduct to be lawful in light of the circumstances known to him at the time[,] [a] parallel

state law claim of assault and battery is subsumed within the federal excessive force claim and so goes forward as well." *Rowland v. Perry*, 41 F.3d 167, 174 (4th Cir. 1994)(applying North Carolina law). Accordingly, as the conduct of each Defendant violated Plaintiffs' clearly established rights under the Fourth Amendment to be free from excessive force, Plaintiffs' state law assault and battery claims should also proceed.

### 4. Intentional Infliction of Distress Claims.

Plaintiffs have also established their claims for intentional infliction of emotional distress ("IIED"). The elements of an IIED claim are: "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress." *Walker v. City of Durham*, 158 N.C. App. 747, 582 S.E.2d 80 (2003). Clearly, there is evidence from which a jury could find for the Plaintiffs on each of these elements. There was extreme and outrageous conduct—Defendant Martin illegally, intentionally and unjustifiably shot and killed Todd Burroughs in front of his wife and minor children. (SMF ¶¶ 38-42.) This conduct clearly caused severe emotional distress, as it would to any family watching the intentional employment of deadly force against their father. (SMF ¶¶ 46-8.) Accordingly, these claims should be heard by the jury.

### 5. Plaintiffs' Claim Against The Surety Is Proper Because Summary Judgment Should Be Denied On Their Claims Against The Other Defendants.

Defendants argue that the Surety should be dismissed if summary judgment is entered against the other Defendants. As Plaintiffs' claims should proceed against the other Defendants, however, their action against Liberty Mutual should also stand.

25

### B. The Governmental Immunities For Plaintiffs' Tort Claims Do Not Apply To Violations of Clearly Established Rights And Have Been Waived To the Extent Of The Bond.

Defendants are not entitled to public official immunity for Plaintiffs' state law claims. It is well-established that the defense of public official immunity "is unavailable to officers who violate clearly established rights." *Bailey*, 349 F.3d at 742; *Rowland v. Perry*, 41 F.3d 167, 174 (4th Cir. 1994). For the reasons articulated above, Defendants' conduct violated Plaintiffs' clearly established rights to be free from a baseless traffic stop, unreasonable entry onto their property, and the unlawful arrest, use of excessive force and misuse of deadly force against Mr. Burroughs. As such, Defendants' motion for summary judgment on Plaintiffs' state law claims based on the defense of public official immunity should also be denied.

### IV. Punitive Damages Are Appropriate Here, As Defendants' Actions Constitute Gross Misconduct.

When a law enforcement officer, in violation of a citizen's rights, intentionally shoots and kills a father and husband in front of his family, by definition the issue of punitive damages be submitted to the jury for determination. Defendants' actions described *supra* fall squarely within North Carolina 1D-15's standards for willful or wanton conduct appropriate for the award of punitive damages. Moreover, the issue of punitive damages is a factual question plainly within the purview of the jury. *Hinson v. Dawson*, 244 N.C. 23, 26, 92 S.E.2d 393, 395 (1956)(whether and how much to award in punitive damages are questions "determinable by the jury in its discretion"). The conduct was clearly willful (intentional), and therefore warrants an award of punitive damages. In fact, the evidence in this case would also allow the jury to find wanton conduct. However, only one of the two is required

for the jury, in its sole discretion, to award punitive damages. North Carolina Pattern Instruction—Civil 810.91. As a reasonable jury could certainly award punitive damages on the facts presented here— summary judgment on this issue is inappropriate.

## **CONCLUSION**

For the reasons stated above, Defendants' Motion for Summary Judgment be denied on all grounds.

This the 26th day of November, 2018.

/s/ John R. Edwards____
John. R. Edwards
North Carolina State Bar No. 7706
Email: jedwards@edwardskirby.com

/s/ Catharine E. Edwards___
Catharine E. Edwards
North Carolina State Bar No. 52705
Email: cedwards@edwardskirby.com

**EDWARDS KIRBY, LLP**
3201 Glenwood Avenue, Suite 100
Raleigh, North Carolina 27612
Telephone: (919) 780-5400
Facsimile: (919) 800-3099

/s/ Mark L. Bibbs
Mark L. Bibbs
North Carolina State Bar No. 22680

**MARK BIBBS LAW, PLLC**
410 N. Boylan Avenue
Raleigh, North Carolina 27603
Telephone: (919) 256-3775
Facsimile: (919) 256-3739
Email:       bibbslawgroup@gmail.com

*Attorneys for Plaintiffs*

27

## <u>CERTIFICATION OF WORD COUNT</u>

I hereby certify that this Brief is 7,678 words in length (excluding the caption, signature lines and certificate of service), in compliance with Local Rule 7.3(d) and the additional word allowance requested by Plaintiffs in their Motion for Leave to Exceed Word Limitation (Dkt. No. 46.)

/s/ Catharine E. Edwards
N.C. State Bar No. 52705
Attorney for Plaintiffs
Edwards Kirby, LLP

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this day I electronically filed the foregoing **PLAINTIFFS' BRIEF IN RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system, which will send notification to the following CM/ECF participants:

<u>Via E-mail:</u> shannonwilson@davisandhamrick.com
Shannon Warf Wilson
DAVIS & HAMRICK, L.L.P.
P.O. Drawer 20039
Winston-Salem, NC 27120-0039

<u>Via E-mail:</u> arowe@davisandhamrick.com
Anne Cox Rowe
DAVIS & HAMRICK, L.L.P.
P.O. Drawer 20039
Winston-Salem, NC 27120-0039

<u>Via E-mail:</u> ldavis@davisandhamrick.com
Harry Lee Davis
DAVIS & HAMRICK, L.L.P.
P.O. Drawer 20039
Winston-Salem, NC 27120-0039

*Attorneys for Defendants*

This the 26th day of November, 2018.

/s/ Catharine E. Edwards
N.C. State Bar No. 52705
Attorney for Plaintiffs
Edwards Kirby, LLP

29